IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEJUAN HICKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 6:23-cv-208-RAW-JAR |
| CITY OF DURANT; THOMAS BILLY; | ) |
| RICKY FORD; MICHAEL | ) |
| GOODLOW; and THOMAS | ) |
| ROBERTSON, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Dejuan Hickson brings this action against Defendants City of Durant (the "City"), Thomas Billy, Ricky Ford, Michael Goodlow, and Thomas Robertson (collectively, the "Officers") pursuant to certain state law claims and 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendments during Hickson's arrest on September 6, 2021. Pending before the court is the Partial Motion to Dismiss jointly filed by the Officers pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. 30].

**I.     ALLEGATIONS AND PROCEDURAL HISTORY**

In his Amended Complaint, Hickson alleges that Officer Thomas Billy entered his home on the morning of September 6, 2021, instigated a physical altercation, and arrested him without probable cause. [Doc. 28, ¶¶ 10-14]. Hickson vaguely references an event at a local gas station earlier that morning, where multiple officers from the Durant Police Department held him at gun point while Officer Billy spoke with Hickson's girlfriend, Lorena, about a recent

1

"conflict" between the couple. [*Id.* ¶¶ 10, 15-16]. Officer Billy pointed at his body camera before asking Lorena whether Hickson's driver's license was suspended and whether she wanted to press charges against him. [*Id.* ¶¶ 16-17]. Because Lorena was unaware of the status of his license and had no desire to press charges, Hickson was informed that he was free to leave. [*Id.* ¶ 15]. He drove away from the gas station just before Officer Billy discovered that his driver's license was, in fact, suspended. [*Id.* ¶¶ 17-19].

According to the Amended Complaint, Lorena asked Officer Billy to escort her to Hickson's home so she could gather her belongings. [*Id.* ¶ 10]. When they arrived, Hickson was standing on his front porch. [*Id.* ¶ 11]. Officer Billy immediately exited his vehicle and demanded that Hickson place his hands atop his head. [*Id.* ¶ 12]. When Hickson asked why he was under arrest, Officer Billy responded: "Driving under suspension." [*Id.*]. Officer Billy then proceeded to tase Hickson, push him inside the home, choke him, and slam him front-first to the ground. [*Id.* ¶¶ 12-14]. At some point during this alleged altercation, Officer Billy placed Hickson in handcuffs. [*Id.* ¶ 13]. Hickson further claims that Officers Ricky Ford, Michael Goodlow, and Thomas Robertson arrived at the scene while he was still handcuffed on the floor. [*Id.* ¶ 21]. They yelled at Hickson to stay seated, expressed indifference as to whose home they were in, acknowledged they had just permitted Hickson to leave the gas station, and joked that Lorena "should ensure she's grabbed all her stuff so she wouldn't have to return." [*Id.* ¶¶ 21-22]. Following his arrest, Hickson was charged with "resisting an officer."

[*Id.* ¶ 23]. The state court action was dismissed without prejudice on June 22, 2022. [*Id.*].

Hickson initiated this district court action on May 19, 2023 and set forth the following claims in his Amended Petition: (1) arrest without probable cause against Officer Billy, in violation of the Fourth Amendment; (2) excessive force against Officer Billy, in violation of the Fourth Amendment; (3) failure to intervene against Officers Ford, Goodlow and Robertson, in violation of the Fourteenth Amendment; (4) municipal liability against the City pursuant to 42 U.S.C. § 1983; (5) false arrest against Officer Billy, in violation of state law; (6) assault and battery against Officer Billy, in violation of state law; (7) intentional infliction of emotional distress against all Defendants, in violation of state law; and (8) malicious prosecution against Officer Billy and the City, in violation of state law.[1]

## II. ANALYSIS

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). To survive a Rule 12(b)(6) dismissal motion, a plaintiff

---

[1] The City also filed a partial motion to dismiss on December 15, 2023, seeking dismissal of Hickson's malicious prosecution and intentional infliction of emotional distress claims pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. 31]. On January 31, 2024, this court recommended that the City's motion be granted pursuant to Hickson's failure to file a response thereto. [Doc. 44].

3

must "nudge []his claims across the line from conceivable to plausible." Id. (*quoting* Twombly, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Id.

**First,** Officer Billy argues Hickson's state law false arrest, assault, and battery claims are barred by the applicable statute of limitations. [Doc. 30, p. 5]. To start, Hickson alleges the events at issue occurred on September 6, 2021. [Doc. 28, ¶ 10]. The limitations period for his false arrest, assault, and battery claims is set by 12 *Okla. Stat.* § 95(A)(4), which requires that such claims be filed within one year after the date of accrual.[2] Thus, Hickson had until September 6, 2022 to bring these claims against Officer Billy. Because this action was filed on May 19, 2023, Hickson's false arrest, assault, and battery claims against Officer Billy are barred by § 95(A)(4)'s one-year limitations period and should be dismissed from this action.

**Second**, Officer Billy contends that Hickson's state law malicious prosecution claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. 30, p. 5]. For a malicious prosecution claim to lie under Oklahoma law, the suit giving rise to such claim must terminate in the claimant's favor. Greenberg v.

---

[2] *See* Craig v. City of Hobart, 2009 U.S. Dist. LEXIS 18261 at *5, 2009 WL 605720 at *2 (W.D. Okla. Mar. 9, 2009) (holding state law assault, battery, and false arrest claims are subject to § 95(A)(4)'s one-year limitations period); *see also* Belflower v. Blackshere, 1955 OK 74, ¶ 12, 281 P.2d 423, 425 (recognizing the tort of false arrest carries a one-year limitations period).

Wolfberg, 1994 OK 147, ¶ 20, 890 P.2d 895, 901-02. "*Dismissal without prejudice is not a termination favorable to the malicious prosecution plaintiff.*" Id. (emphasis in original). Here, the underlying state court action against Hickson was dismissed without prejudice. [Doc. 31-1]. Without a termination in Hickson's favor, there is no actionable state law claim for malicious prosecution. If a claim is not actionable, it is not plausible. Hickson's malicious prosecution claim against Officer Billy should be dismissed from this district court action.

**Third**, Officers Ford, Goodlow, and Robertson argue Hickson has failed to state a § 1983 cause of action for failure to intervene. [Doc. 30, pp. 6-7].[3] To sufficiently state a constitutional failure to intervene claim, a plaintiff must allege: (1) a government officer violated his constitutional rights, (2) a different government actor – *i.e.*, the defendant – observed or had reasons to know about that constitutional violation, and (3) the defendant had a realistic opportunity to intervene but failed to do so. Bledsoe v. Carreno, 53 F.4th 589, 616 (10th Cir. 2022). In the Amended Complaint, Hickson alleges that Officers Ford, Goodlow, and Robertson arrived at the scene *after* Officer Billy committed certain constitutional violations. [Doc. 28, ¶ 21]. A claim for failure to intervene is, of course, neither actionable nor plausible absent a realistic opportunity for the defendants to intervene. Therefore, Hickson's failure to intervene claim against Officers Ford, Goodlow, and Robertson should be dismissed.

---

[3] The court acknowledges, but does not substantively address herein, the additional argument proffered by Officers Ford, Goodlow and Robertson concerning their entitlement to qualified immunity with respect to Hickson's failure to intervene claim.

**Fourth**, Officers Ford, Goodlow, and Robertson argue that Hickson has failed to state a claim for intentional infliction of emotional distress ("IIED") because the accusations in his Amended Complaint do not rise to the level of outrageousness required for a finding of IIED under Oklahoma law. [Doc. 30, pp. 8-10]. "As a threshold matter, the trial court should determine as a matter of law whether the conduct at issue reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of [IIED]."[4] "The conduct must be beyond all bounds of human decency or such as is regarded as utterly intolerable in a civilized community." Zeran v. Diamond Broad., Inc., 203 F.3d 714, 720 (10th Cir. 2000) (*citing* Eddy v. Brown, 1986 OK 3, ¶ 7, 715 F.2d 74, 77). Under Oklahoma law, liability for IIED does not extend to "'mere insults, indignities, threats' or 'occasional acts that are definitely inconsiderate and unkind.'" Eddy, 715 P.2d at 77 (citations omitted). The conduct on which Hickson's IIED claim is premised does not rise to the level of an "extraordinary transgression of the bounds of civility." Eddy, 715 P.2d at 77 n.6; Merrick v. Northern Natural Gas Co., 911 F.2d 426, 433 (10th Cir. 1990) (*citing* Eddy, 715 P.2d at 77) ("[Y]elling, hostile reactions, and the hurt feelings naturally accompanying such conduct do not give rise to a cause for [IIED]."). Accordingly, Hickson's IIED claim against Officers Ford, Goodlow, and Robertson should be dismissed pursuant to Fed. R. Civ. P 12(b)(6).

---

[4] Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1222 (10th Cir. 2007) (internal citations omitted). The New Mexico law of IIED cited in *Alvarado* follows the Restatement (Second) of Torts § 46, as does Oklahoma. *See* Computer Publs., Inc. v. Welton, 2002 OK 50, ¶ 7, 49 P.3d 732, 734 (The tort [of IIED] is governed by the narrow standards of the Restatement (Second) of Torts § 46.").

**Finally**, the Officers assert that if Hickson were to request leave to further amend his complaint, such request should be denied on grounds of futility. *See* Full Life Hospice, LLC v. Sebelius, 709 F.3d 1012, 1018 (10th Cir. 2013) ("[A] district court may refuse to allow amendment if it would be futile."); *see also* Jefferson County Sch. Dist. v. Moody's Investor's Servs., 175 F.3d 848, 859 (10th Cir. 2009) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."). If Hickson were granted leave to amend, his false arrest, assault, battery, malicious prosecution, failure to intervene, and IIED claims would still be unable to withstand a Rule 12(b)(6) dismissal motion. Based on the foregoing, this court recommends a determination that further amendment of Hickson's Amended Complaint would be futile.

### III. CONCLUSION

IT IS THEREFORE THE RECOMMENDATION OF THIS COURT that the Partial Motion to Dismiss filed by Defendants Thomas Billy, Ricky Ford, Michael Goodlow, and Thomas Robertson [Doc. 30] be **GRANTED**. The parties are herewith given 14 days from the date of the service of this Report and Recommendation to file any objections with the Clerk of the court. Any such objection shall be limited to 10 pages in length. Failure to object to the Report and Recommendation within 14 days will preclude review of this decision by the District Court. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

DATED this 6th day of February, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE